### DURCHMANN v. DUNN et al.

(Circuit Court of Appeals, Second Circuit. February 27, 1901.)

#### No. 61.

1. SHIPPING—DEMURRAGE—CONSTRUCTION OF CHARTER.

A provision in a charter for carrying lumber that the cargo should be furnished "at the port of loading as fast as vessel can receive and properly stow same in suitable hours and weather," has reference to the hours and weather suitable for loading and stowage, and does not exclude time lost by reason of the lumber becoming wet, and unfit for loading, before it is forwarded to the ship.[1]

2. SAME.

A provision in a charter party that cargo shall be "discharged at port of destination at the average rate of not less than 35,000 superficial feet per running day, Sundays and holidays excepted," refers as to the rate to the discharge at the port of destination, and not to the loading.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the district court, Southern district of New York (101 Fed. 606), giving libelant four days' demurrage—$551.04—for delay in loading the ship Columbus at Batiscan, Canada, in August and September, 1898. The clause of the charter party pro-

---

[1]Demurrage, see note to Randall v. Sprague, 21 C. C. A. 337.

viding for demurrage reads as follows: "Cargo to be furnished at PORT OF LOADING, *as fast as vessel can receive and properly stow same in suitable hours and weather*, and to be discharged at PORT OF DESTINATION at the average rate of not less than (*35 M*) *thirty-five* thousand superficial feet per running day, Sundays *and holidays excepted.*" The part in capital letters is so printed in the charter, the part italicized is written.

Hamilton Wallis, for appellants.
Harrington Putnam, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. We concur in the findings and conclusions of the district judge. Inspection of the demurrage clause shows most clearly that the average rate therein stated—"not less than 35,000," etc.—refers to discharge at the port of destination, not to the loading. So, too, it would be a most strained and unwarranted construction to hold that the phrase "in suitable hours and weather" refers to hours or weather elsewhere than at the port of loading, or that it can be availed of to excuse delay occasioned by the circumstance that the lumber got wet (and therefore unfit to ship) through a local rain at the storage yards of the shipper, 12 miles away. The testimony of the master that the payment actually made to him in the port of delivery was the "full amount of the freight money, and nothing else," stands uncontradicted, and precludes any finding that there was an accord and satisfaction. The charter provided for payment of the demurrage day by day by the party of the second part. It was his debt, and was not provided for in the bill of lading. The master, therefore, released no security when he gave up the cargo to the consignees in Buenos Ayres, and is still entitled to collect his debt from the charterer, even though the latter was but the agent of the consignees, who were the real, although undisclosed, owners. The decree is affirmed, with costs.